UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| CLENNETH J. HARRIS, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | 1:09-cv-284/1:08-cr-19 |
| | ) | |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

*Pro se* Petitioner Clenneth J. Harris filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 31) on November 9, 2009. The Government filed a response in opposition to Petitioner's § 2255 motion (Court File No. 42), and Petitioner submitted a reply (Court File No. 43). The motion, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion[1] will be **DENIED** for lack of merit (Court File No. 31).

**I.    RELEVANT FACTS AND PROCEDURAL HISTORY**

On February 26, 2008, Petitioner was charged in a one-count indictment with possession

---

[1] In accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, and all the files, records, transcripts, and correspondence relating to Harris' conviction in Criminal Docket No. 1:08-cr-19, which will be cited by the Court File Number assigned to the particular pleading or motion (e.g., "Court File No. 31, Petition.").

with the intent to distribute fifty grams or more of cocaine base ("crack"), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Court File No. 2, Indictment). The indictment also contained a forfeiture allegation pursuant to 21 U.S.C. § 853 (*id.*). Attorney Arvin Reingold made an appearance in the case as Petitioner's counsel and Petitioner made his initial appearance before the magistrate judge on March 25, 2008 (Court File No. 3). On March 26, 2008, the Government filed a notice of intent to use Petitioner's prior conviction for possession of crack cocaine for resale to enhance his punishment pursuant to 21 U.S.C. § 851 (Court File No. 4).

On July 24, 2008, the Court held a change of plea hearing (Court File No. 15). Pursuant to a plea agreement Petitioner had entered into with the Government, Petitioner pleaded guilty to Count One of the indictment (*id.*). The facts underlying the offense as described in paragraph 4 of the plea agreement are as follows:

> On November 27, 2007 Detective Andy Browne, Hamilton County Sheriff's Office Narcotics Division, spoke with a CI regarding Clenneth J. Harris. According to the CI, he was planning on purchasing one-half (1/2) kilogram of cocaine base ("crack") for $11,000.00 later that day. According to the CI, they typically met at the Laurel Ridge Apartments, 4715 Bonny Oaks Drive, Chattanooga, Tennessee, and that Harris would be in a black Silverado Chevrolet truck. Accordingly, surveillance was established by the ATF Task Force and a vehicle matching this description was observed to arrive at or about 1327 hours in said parking lot. The CI, who was in another vehicle with Detective Browne at a nearby location, informed Detective Browne that he observed the defendant "flash" the "crack", to alert him that he had possession of the illegal substance. According to the CI, the transaction would occur at a different location, away from the Bonny Oaks Apartments. Earlier that day, the defendant and others converted cocaine hydrochloride into crack cocaine. However, law enforcement decided to arrest the defendant while he was in the Bonny Oaks apartment complex parking lot, so as to avoid a fluid and mobile situation whereby he could abscond with the cocaine. Accordingly, Detectives approached the defendant and ordered him to exit the vehicle. A drug dog promptly alerted on the vehicle for the presence of cocaine.
>
> The truck was searched incident to arrest and three large "rocks" of "crack" cocaine were seized. (The forensic laboratory analysis disclosed that the defendant had possession of 333.9 grams of cocaine base, a Schedule II controlled substance.)

> Defendant was arrested, advised of his *Miranda* rights, and confessed, stating that his source was in Atlanta, Georgia.
>
> The defendant acknowledges that these facts are correct and accurately stated, and that the offense occurred in the Eastern District of Tennessee.

(Court File No. 16 ¶ 4).

During the guilty plea hearing, Petitioner affirmed under oath that he was satisfied with his counsel's representation, understood that he was giving up certain rights by entering a guilty plea, and stated he was doing so voluntarily (Court File No. 38 at 2-4, Rearraignment Transcript). Petitioner then confirmed the plea agreement contained all of the understandings that he had with the Government regarding his case (*id.* at 5). The Court inquired as to whether "any officer or agent of the government promised or suggested that [he would] receive a lighter sentence or some other form of leniency if [he] plead[ed] guilty?" (*id.* at 6). Petitioner responded, "No sir" (*id.*). After being read Count One of the indictment, Petitioner indicated that he was pleading guilty to the charge (*id.* at 6-7). Next, the Court discussed the elements of the offense and the possible penalties (*id.* at 7). The Government informed the Court and Petitioner that "if the defendant is found guilty of the offense and has a prior felony conviction, the defendant faces a maximum term of life imprisonment and a minimum term of 20 years" (*id.*).

The Court then explained to Petitioner the role of the United States Sentencing Guidelines ("USSG") that Courts consider in determining a defendant's sentence (Court File No. 38 at 8). The Court informed Petitioner that it "however, is not bound by these guidelines, and may lawfully impose a sentence upon you up to and including the maximum that [the Government] indicated a few minutes ago" (*id.*). The Court inquired whether Petitioner had discussed the possible sentence and the application of the sentencing guidelines to his case with counsel, and Petitioner stated "Yes,

sir" (*id.* at 8-9). The Court indicated it would not be able to determine the Guidelines sentence until after a presentence investigation report ("PSR" or "presentence report") was filed and the parties had an opportunity to challenge the facts (*id.* at 9). The Court also asked Petitioner if he "understood that it is possible that if you have prior convictions those will increase your sentence under the sentencing guidelines" and Petitioner responded "Yes, sir" (*id.* at 9). Among other things, the Court also asked Petitioner whether he understood that the Court would consider the sentencing guidelines and possibly other factors in setting his sentence and that his "sentence may be more severe or less severe than the sentence called for by the sentencing guidelines"; and even if the sentence was "more severe than expected, [he] will still be bound by [his] plea and will have no right to withdraw from [his] plea" (*id.* at 9-10). To both questions, Petitioner responded "Yes, sir" (Court File No. 38 at 9-10). Finally, Petitioner affirmed there was nothing in the fact section of his plea agreement--that is, paragraph 4--that was not true as far as he knew, and that he was pleading guilty because he was in fact guilty (*id.* at 11-12). Based on the above, the Court determined Petitioner was competent and capable of entering an informed plea and that his plea was knowing and voluntary (*id.* at 12). The Court therefore accepted Petitioner's guilty plea (*id.*).

A presentence report was subsequently prepared by the probation office. The probation officer determined Petitioner had a base offense level of 32, which was reduced by three levels for acceptance of responsibility. With a total offense level of 29 and a criminal history category of II, Petitioner's advisory Guidelines range was 97 to 121 months. However, because Petitioner had a prior felony drug conviction, he was subject to a statutory mandatory minimum sentence of 20 years, pursuant to 21 U.S.C. § 841(b)(1)(A). Thus, his effective Guidelines range became 240 months.

Petitioner was sentenced on December 9, 2008 (Court File No. 25). After hearing from

Petitioner's counsel, Petitioner, and the Government, and after considering the 18 U.S.C. § 3553(a) factors, the Court imposed a sentence of 240 months imprisonment (*id.*; Court File No. 28 at 2, Judgment). Petitioner did not file a direct appeal of his sentence.

## II.     STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, on the grounds

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due

process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III. DISCUSSION

Petitioner raises three grounds for relief in his § 2255 motion. First, he claims counsel was ineffective because he was "not licensed to practice law in the federal court system" (Court File No. 31 at 5). Second, Petitioner argues his sentence was "in excess of the maximum allowed by law" (*id.* at 7). Finally, Petitioner contends his guilty plea was invalid because his plea was not "made knowingly, voluntary, or intelligently" (*id.* at 8). The Court will address each of Petitioner's arguments below.

#### A. Ineffective Assistance of Counsel

Petitioner first raises an ineffective assistance of counsel claim against his attorney, Arvin Reingold,[2] and argues counsel was ineffective because he was not licensed to practice law in federal court. Petitioner notes Mr. Reingold was his attorney during state proceedings in 2007. He also attaches as an exhibit what appears to be an excerpt from a publication that reads: "U.S. District Court Judge Paul C. Weick administers the oath to seven Youngstown attorneys admitted to practice in federal courts: Phillip A. Crino, Lloyd R. Haynes, Lawrence V. Cregan, Michael Yurchison, Leo

---

[2] Petitioner initially states counsel's name is "Arvin Ringo" (Court File No. 31 at 5). However, in his reply brief he agrees with the Government that counsel's name is Arvin Reingold.

6

Morley, Nelson Doyle and Charles Bannon" (Court File No. 43-1). Next to the excerpt is a handwritten notation, presumably written by Petitioner, that reads, "Why would these lawyers have to have an [ ] oath administer[ed] after being admitted to practice law in fed system if it was not a required requirement?" (*id.*). Finally, Petitioner argues that attorneys who practice in federal court without proper licensure or certification are "automatically deficient and prejudice to their clients are automatic also" (Court File No. 43 at 4). He relies primarily upon *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983) for this proposition.

In response, the Government contends Petitioner has failed to establish Mr. Reingold was not licensed to practice law and, on that basis alone, his claim should be rejected. The Government further argues that, even if Petitioner had shown Mr. Reingold lacked proper licensure, he has failed to allege how if at all Mr. Reingold's performance was deficient. The Government also notes that contrary to Petitioner's assertions the United States Court of Appeals for the Sixth Circuit has never adopted a *per se* rule of ineffectiveness on this grounds. Finally, the Government avers Petitioner has failed to demonstrate how he would have been prejudiced. The Court will address the parties' arguments after discussing the applicable law.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *See Weinberger v. United* States, 268 F.3d 346, 352 (6th Cir. 2001); *see also Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

When considering the second prong in relation to a guilty plea, the movant must show a reasonably probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

Although we have discussed the performance component of an ineffectiveness claim

> prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Here, Petitioner's sole ground for making out his ineffective assistance of counsel claim is his allegation that Mr. Reingold was not licensed to practice law in federal court. Petitioner appears to be arguing Mr. Reingold needed some sort of a federal "license" to practice in federal court and such credentials were lacking on his part. An attorney, however, can apply to be admitted to practice law in federal court in the Eastern District of Tennessee if he is "currently admitted to practice in the highest court of a state, territory, or the District of Columbia" and he "appear[s] to the Court to be of good moral and professional character." E.D. Tenn. L.R. 83.5. General information pertaining to an attorney's license to practice law is a matter of public record. *See United States v. Headley*, 230 F.3d 1360, 2000 WL 1359620, at *5 (6th Cir. 2000). As evidenced by the Certificate of Good Standing from the Clerk of Court attached as Exhibit 1, Mr. Reingold was admitted to practice in federal court in the Eastern District of Tennessee on April 25, 1975, and he has been in good standing since his admission. *See* Exhibit 1. The Court also takes judicial notice of the fact that, according to the website of the Board of Professional Responsibility of the Tennessee Supreme Court, Mr. Reingold has been licensed to practice law in Tennessee since 1957. *See* http://www.tbpr.org/Consumers/AttorneySearch/. The Government also references the Board of Professional Responsibility's website as evidence that Mr. Reingold was licensed to practice law

9

in the State of Tennessee.[3]

Petitioner has not alleged any facts that would contradict the information above. In fact, other than broadly alleging Mr. Reingold is not licensed to practice law in federal court, the only fact Petitioner alleges in support of his claim is that Mr. Reingold represented him in state court in 2007. However, even that argument is unavailing because the practice of law in state and federal court is not mutually exclusive. In fact, as noted earlier, one of the criteria for being admitted to practice before this Court is state licensure.

Petitioner attempts to bolster his argument by citing *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983). In *Solina*, the Second Circuit adopted a *per se* rule that a defendant's Sixth Amendment rights are violated if he unknowingly is represented by counsel "not authorized to practice law in any state." *Id.* at 167. The Sixth Circuit, however, has never expressly adopted a *per se* rule like the one articulated in *Solina*. In fact, on several occasions, the court decided not to reach the question of the effectiveness of an unlicensed attorney after determining the movant had not met his burden of showing the attorney lacked a license to practice law. For example, in *Headley*, the issue was whether an attorney was "ineffective per se because of his not having been admitted to practice before the federal court." *Headley*, 2000 WL 1359620, at *5-6. However, because the defendant failed to carry his burden of showing counsel lacked a license to practice law--and it was undisputed counsel was licensed to practice law in state court at the time of the defendant's trial--the Sixth Circuit concluded it need not decide whether to adopt the *per se* rule discussed in *Solina*. *Id.*

---

[3] Petitioner did not dispute the Government's contention that Mr. Reingold was licensed in state court. Instead, he argued proof of Mr. Reingold's licensure in the state of Tennessee did not establish Mr. Reingold was licensed or authorized to practice in federal court. However, because this Court has also taken notice that Mr. Reingold has been admitted to practice before this Court, Petitioner's arguments are unavailing.

at *6; *see Blanton v. United States*, 94 F.3d 227 (6th Cir. 1996); *Sexton v. United States*, 65 F.3d 169 (6th Cir. 1995).

Here, Petitioner has also failed to carry his burden of demonstrating Mr. Reingold was not "licensed" to practice in federal court. Accordingly, his claim must be **DENIED**.

B.     **Sentence in Excess of the Maximum Allowed by Law**

Next, Petitioner contends the sentence imposed by this Court exceeded the maximum allowed by law (Court File No. 31 at 7). He claims he had a criminal history category of II and a base offense level of 32. Therefore, his Guidelines range should have been 121 to 151 months. Yet, he was sentenced to a term of imprisonment of 240 months (*id.*). He avers the "incorrect application of the sentencing guidelines" is "a direct result of the inexperience[d] representation of his attorney that is not certified to practice law in the federal court system" (*id.*). Most significantly, he argues he did not have a "prior felony conviction" for purposes of receiving a sentencing enhancement because "he only has one prior conviction that did not result in any jail or prison time" (*id.* at 7). In response, the Government contends Petitioner's sentence was properly calculated and Petitioner's arguments are ill-informed.

After considering both parties' arguments, the Court concludes Petitioner has failed to demonstrate his sentence was calculated incorrectly. Petitioner had a prior felony conviction that satisfied the requirements of 21 U.S.C. §§ 841(b)(1)(A) and 851. Section 841(b)(1)(A) provides that if a defendant has a "prior conviction for a felony drug offense" he must be sentenced to a term of imprisonment of at least twenty years. Under the statute, "felony drug offense" is defined as "an offense that is *punishable* by imprisonment for more than one year under any law of the United States or of a State." 21 U.S.C. § 802(44) (emphasis added). Thus, contrary to Petitioner's

contention, under the federal drug laws, a prior felony conviction can be used to enhance his sentence even if he never actually served a day in prison for the offense so long as the punishment for the offense could have been greater than one year. With that said, this issue has no bearing on Petitioner's case because the predicate offense used by the Government to enhance Petitioner's sentence, as noted in the Government's information filed pursuant to 21 U.S.C. § 851, was a 2000 conviction for Possession of Crack Cocaine for Resale. In that case, Petitioner was sentenced to a term of imprisonment of eight years.[4,5]

Petitioner's remaining concerns pertain to the interplay between the Guidelines and the statute. As explained by the Government and as supported by the record, Petitioner had a base offense level of 32, but with a three-level reduction for acceptance of responsibility, he had a total offense level of 29. With a total offense level of 29 and a criminal history category of II, Petitioner's advisory Guidelines range was 97 to 121 months. However, because Petitioner had a prior felony drug conviction, he was subject to a statutory mandatory minimum sentence of 20 years pursuant to 21 U.S.C. § 841(b)(1)(A). Thus, his effective Guidelines range became 240 months. The Court did not have any discretion in imposing a sentence below the statutory mandatory minimum due to the sentencing enhancement for his prior conviction. Accordingly, Petitioner has failed to

---

[4] Petitioner does not deny that he obtained this prior conviction.

[5] Petitioner also cites to various Guidelines provisions pertaining to prior felony convictions and career offenders. Section 4B1.1, however, was not discussed in Petitioner's PSR. Moreover, Petitioner was never deemed a career offender as defined by USSG § 4B1.1, which pertains to defendants eighteen and older who commit a felony that is either a crime of violence or a controlled substance offense and have at least two prior felony convictions of a similar nature. Petitioner also broadly avers that the prior conviction should not count because it was "related" to the instant offense. However, he offers no facts to support this contention nor does it appear the issue was ever raised with the district court.

demonstrate his sentence was imposed in excess of the maximum, and this claim must be **DENIED.**

   C.   **Invalid Guilty Plea**

Finally, Petitioner contends his guilty plea was not made "knowingly, voluntary, or intelligently" (Court File No. 31 at 8). He explains this claim "is supported by his first claim of ineffective assistance of counsel" (*id.*). Specifically, he contends that, because he was represented by an unlicensed attorney, "it is utterly impossible for the petitioner to have entered into a valid plea agreement that could even remotely bear the requirements of being voluntary, knowingly, and intelligently made" (*id.* at 6). Petitioner also briefly notes in his reply brief that counsel told him the questions asked at the guilty plea hearing were "only informal questions that the judge had to ask" but "do not worry the sentence will be what the probation office of the PSR report recommend." He then claims he was "tricked" because while the recommendation in the PSR stated he had a Guidelines range of 97 to 121 months, he was sentenced to 240 months.[6]

As a preliminary matter, the Court reiterates that Petitioner never established his attorney was "unlicensed." Thus, such an argument cannot serve as the sole basis for Petitioner's claim that his plea was entered unknowingly or involuntarily. The Court also observes that, even if counsel advised Petitioner that his sentence would be the recommendation in the PSR[7]--when in fact, the

---

[6] It is actually unclear the context in which Petitioner intended for the Court to consider this comment. It was mentioned in the introduction of his reply brief but he does not indicate whether this statement supports his contention that his sentence was imposed in excess of the maximum or that his guilty plea was invalid. Moreover, Petitioner does not explain whether this statement was made before or after the guilty plea hearing. However, even assuming it was intended to be considered with his arguments supporting the invalidity of his guilty plea and assuming the statement was made prior to the guilty plea hearing, this statement without more fails to support Petitioner's contention that his plea was invalid for the reasons discussed in this section.

[7] Though not particularly relevant to the issue at hand, the Court notes that even the PSR indicated Petitioner had an effective Guidelines range of 240 months due to his prior conviction.

Court may consider but is not bound by the recommendation in the PSR--that does not change the fact that Petitioner was put on notice in both the plea agreement and at the guilty plea hearing that the Court ultimately would determine Petitioner's sentence and that he could potentially face a mandatory minimum sentence of 20 years.

At the guilty plea hearing, Petitioner made solemn sworn statements to the Court after being put under oath that he wanted to enter a guilty plea. He affirmed under oath that he was satisfied with his counsel's representation, understood that he was giving up certain rights by entering a guilty plea, and stated he was doing so voluntarily. The Court discussed the charge at issue, the elements of the offense, and the potential penalties. In particular, the Court informed Petitioner that if he had a prior felony conviction, he could face a minimum term of imprisonment of twenty years. The Court also explained that it was responsible for determining Petitioner's sentence although it would take into account considerations such as the Guidelines range, various factors noted in the presentence report, and averments of defense counsel, Petitioner, and the Government. Petitioner affirmed that he understood all of this and, at the end of the proceeding, stated he wanted to enter a guilty plea because he was in fact guilty. Sworn representations such as those made by Petitioner at his guilty plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner has not shown his plea was not entered into knowingly, voluntarily, and intelligently in light of all the facts in the record. Accordingly, the Court will **DENY** his claim.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's sentence was not imposed in violation of the

Constitution or laws of the United States and is not otherwise subject to collateral attack. Therefore, the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 31).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**